UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LEANNE FRIDDLE,                        )
                                       ) No. CV-05-0089-MWL
            Plaintiff,                 )
                                       ) ORDER GRANTING DEFENDANT'S
v.                                     ) MOTION FOR SUMMARY JUDGMENT
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social                 )
Security,                              )
                                       )
            Defendant.                 )
                                       )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on November 21, 2005. (Ct.
Rec. 12, 15).  Plaintiff Leanne Friddle ("Plaintiff") filed a
reply brief on October 27, 2005.  (Ct. Rec. 17).  Attorney Maureen
Rosette represents Plaintiff; Special Assistant United States
Attorney Jeffrey H. Baird represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).
///

**JURISDICTION**

On May 10, 2002, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, alleging disability since February 27, 2002, due to migraine headaches with black outs, stiff neck muscles, vomiting, loss of hearing, and sensitivity to light and sound. (Administrative Record ("AR") 61-63, 73, 299-302). The applications were denied initially and on reconsideration. On October 21, 2003, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff, medical expert Arthur B. Craig, M.D., and vocational expert K. Dianne Kramer. (AR 325-392). On April 28, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-31). The Appeals Council denied a request for review on February 4, 2005. (AR 6-10). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 29, 2005. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 39 years old on the date of the ALJ's decision. (AR 29).

At the administrative hearing held on October 21, 2003, Plaintiff testified that she stands approximately 5'4" tall and weighs about 217 pounds. (AR 343). She stated that she weighed 127 pounds two years prior to the hearing and had gained the

weight as a result of her medications.  (AR 343).  She indicated
that she completed high school and two years of college, but had
not obtained a college degree.  (AR 347).  Plaintiff reported that
she was currently enrolled in college, taking two hours of classes
each day, and studying accounting law and criminal law.  (AR 347-
348).  She stated that 13 years prior to the hearing she had used
street drugs, including acid, cocaine, heroin, marijuana and
methamphetamines, but had been clean and sober for the last 13
years.  (AR 331-332).  She used these street drugs for "a good
five years."  (AR 331).

Plaintiff testified that she was involved in a 1987 motor
vehicle accident for which she was hospitalized for "a good week."
(AR 329, 356, 358).  The accident resulted in injury to the left
side of her face and left her unconscious, off and on, between the
time of the accident and until she arrived at the hospital.  (AR
356-357).

Plaintiff testified that she had experienced seizures, two to
three times a week, for approximately six or seven months in 2001.
(AR 329).  She stated, however, that she had not had a seizure
since 2001.  (AR 329).  Plaintiff explained that when she had a
seizure, she would lose consciousness for two to three hours at a
time.  (AR 330-331).  The seizures were preceded by a migraine
headache and fever.  (AR 329).  She later indicated that she had
experienced seizures as a child, but did not have a seizure from
age five until 2001.  (AR 380).

Plaintiff testified that she last worked on February 27,
2002.  (AR 332).  She reported that she could not continue to work
because she would experience migraine headaches which caused her

to pass out, and she could no longer stand for a long period of time.  (AR 333).  Plaintiff described passing out as her neck would go numb, she would lose her hearing, everything would turn black, and she would collapse to the floor.  (AR 334).  She was informed that she would be unconscious for 30 to 45 minutes at a time.  (AR 334).  Plaintiff stated that she was experiencing these pass out spells four times a week, over a span of a couple of months.  (AR 334).  She testified that she last passed out in early 2003, and, between the time she stopped working in February of 2002 and the start of 2003, she had passed out "hardly at all." (AR 335).  She indicated that she had passed out a total of two times since she stopped working in 2002.  (AR 336).

Plaintiff last worked as a cashier in a convenience store for about one year.  (AR 349-350).  She also worked as a hotel housekeeper, a video rental store clerk, an office, business, and university janitor, and an apartment cleaner, in addition to other work as a cashier at various convenience stores.  (AR 351-354).

Plaintiff testified that she has headaches one to four times per week, lasting up to an entire day.  (AR 358).  She reported difficulty with sleep (AR 360-361), and difficulty going up and down stairs (AR 363).  She stated that she has had swelling in her feet, left hand and face for the past two to three months.  (AR 349, 361-362).  Due to the swelling in her feet, she is able to sit in a chair for only one hour before having to get up and walk around, can stand for only 30 to 45 minutes at a time and walk only about two block in one stretch.  (AR 362-363).  Because of the swelling, Plaintiff stated that she elevates her feet 12 to 14 hours per day.  (AR 363).  Before being affected by the swelling

in her feet, she testified that there was no reason why she could not have sat for an hour or more and she was not otherwise limited in standing, walking or climbing stairs. (AR 369-370). She indicated that she can lift and carry less than five pounds because of pain in her hands and back and running out of breath easily. (AR 364). Prior to her hysterectomy, seven months before the administrative hearing, she reported she was capable of lifting up to eight pounds, but did not have the stamina to lift more and lifting more would make her shoulders ache. (AR 367).

Plaintiff testified that she also has asthma, which is triggered by smoke, dirt and pollen, but her asthma is not always a problem and she is able to get by using only one inhaler over a span of one to two months. (AR 365). She mentioned that her depression was well controlled with the new medication she had been prescribed, Effexor. (AR 366).

Plaintiff testified that she has friends assist her with housework and grocery shopping. (AR 364). She did not have any hobbies (AR 366), instead spending her time lying in bed in the evenings studying for her classes (AR 365). However, she indicated that prior to her problems with swelling in her feet, she cooked, did the housework, went shopping, went on five to six mile bike rides, played tennis, swam and danced. (AR 377-378).

Medical expert Arthur B. Craig and vocational expert K. Diane Kramer also testified at the administrative hearing held on October 21, 2003. (AR 336-342, 381-390).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment

meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by

substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the

decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since her alleged onset date.  (AR
19).  At step two, the ALJ determined that Plaintiff has the
severe impairments of migraine headaches, obesity, a depressive
disorder, not otherwise specified ("NOS"), and a personality
disorder, NOS, but that she does not have an impairment or
combination of impairments listed in or medically equal to one of
the Listings impairments.  (AR 25).  The ALJ indicated that
Plaintiff also has been treated for asthma and has been assessed
with a seizure disorder, but that these impairments did not limit
her ability to perform work activities and were therefore not
considered severe.  (AR 25).

The ALJ concluded that Plaintiff has the residual functional
capacity ("RFC") to perform sedentary exertion work.  (AR 28).
She found that Plaintiff was further restricted to simple
repetitive tasks, superficial contact with the public and no more
than simple changes in the work setting.  (AR 28).

At step four of the sequential evaluation process, the ALJ
found that Plaintiff lacks the RFC to perform the exertion
requirements of her past relevant work.  (AR 29).  However, the

ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations. (AR 29-30). Examples of such jobs included work as a charge account clerk, a telephone quotation clerk, and an addresser. (AR 30). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30-31).

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. Plaintiff is more limited from a psychological standpoint than what was determined by the ALJ;

2. The ALJ erred by failing to include Plaintiff's moderate limitation in her ability to maintain attention and concentration in her hypothetical question to the vocational expert;

3. New evidence submitted to the Appeals Council, a psychological evaluation completed by Dennis R. Pollack, Ph.D., provides additional evidence that she is more limited from a psychological standpoint than what the ALJ determined;

4. Plaintiff is more limited from a physical standpoint than what was determined by the ALJ; and

5. The ALJ erred by giving more weight to the opinion of a nonexamining medical advisor than to Plaintiff's treating physician, William Roth, M.D.

///

1    This court must uphold the Commissioner's determination that

2 Plaintiff is not disabled if the Commissioner applied the proper

3 legal standards and there is substantial evidence in the record as

4 a whole to support the decision.

5                            **DISCUSSION**

6 **A.  Psychological Limitations**

7    Plaintiff contends that she is more limited from a

8 psychological standpoint than what was determined by the ALJ.

9 (Ct. Rec. 13, pp. 11-12).  Plaintiff specifically asserts that the

10 ALJ erred by failing to find that she is moderately limited in her

11 ability to maintain attention and concentration for extended

12 periods. (Ct. Rec. 13, p. 12).  In support of her argument in this

13 regard, Plaintiff directs the Court's attention to a form

14 completed by reviewing state agency physician, James E. Bailey,

15 Ph.D., on October 7, 2002 (AR 204-221), and evidence submitted

16 only to the Appeals Council, consisting of an April 21, 2004

17 psychological evaluation completed by Dennis R. Pollack, Ph.D. (AR

18 316-324).

19    The ALJ concluded that Plaintiff retains the mental RFC to

20 perform simple repetitive tasks, with superficial contact with the

21 public and no more than simple changes in the work setting.  (AR

22 28, 31).  In making this determination, the ALJ chiefly relied

23 upon the findings of examining medical professional Frank

24 Rosenkrans, Ph.D.  (AR 21-28).

25    Dr. Rosenkrans, in conjunction with Darcie J. Smiley, M.S.,

26 and Donald Crawford, M.S., examined Plaintiff on August 1, 2002.

27 (AR 196-203).  They diagnosed Plaintiff with a depressive

28 ///

disorder, NOS, and a personality disorder, NOS, with borderline features, and gave her a Global Assessment of Functioning ("GAF") score of 55.[1]  They reported that Plaintiff's overall intellectual functioning should not impair her ability to function in a normal work environment, and that going back to work would likely alleviate some of her depressive symptoms.  (AR 22, 28, 202-203).

Dr. Pollack and Dr. Bailey each checked a box[2] indicating that Plaintiff had a moderate limitation with her ability to maintain attention and concentration for extended periods.  (AR 218, 323).  However, Dr. Bailey also marked in the same report a box indicating that Plaintiff had only "mild" difficulties in maintaining concentration, persistence or pace (AR 214), and in the Ability To Do Work-Related Activities (Mental) completed by Dr. Pollack, the definition of a "moderate" limitation is as follows: "There is a moderate limitation in this area but the individual is still able to function satisfactorily."  (AR 323).

In any event, the ALJ did not reject the finding that Plaintiff had a moderate limitation in her ability to maintain attention and concentration for extended periods.  The ALJ simply considered this limitation, in addition to the opinions of the other medical professionals of record, and found that Plaintiff ///

---

[1]A GAF of 51 to 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), OR moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers).  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

[2]A check-box form is entitled to little weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

was limited to the performance of only simple, repetitive tasks as a result of all of her limitations.  (AR 28).  A finding that is not contradicted by the record evidence.

The Appeals Council considered Dr. Pollack's report and determined that nothing in his report indicated that Plaintiff did not have the capacity to perform simple repetitive work as found by the ALJ.  (AR 7).  The Appeals Council additionally noted that Dr. Pollack's report indicated that Plaintiff was taking and passing college courses, "an endeavor that requires more attention and concentration, greater criticism (marks) and greater persistence than simple repetitive work."  (AR 7).  Accordingly, as assessed by the Commissioner, and contrary to Plaintiff's argument here, the Appeals Council concluded that Dr. Pollack's opinion tended to confirm the ALJ's mental RFC finding or confirm that Plaintiff was even more robust.  (Ct. Rec. 16, pp. 12-13).

The ALJ's mental RFC finding is in accord with the weight of the record evidence.  The record does not support a more restrictive finding than claimant having the ability to perform simple repetitive tasks, with superficial contact with the public and no more than simple changes in the work setting.  (AR 28, 31).  Accordingly, the Commissioner did not err in so finding in this case.

Since the undersigned finds that the ALJ's mental RFC finding is supported by the record, it follows that the ALJ did not err by failing to include additional limitations in her hypothetical questions presented to the vocational expert.  Accordingly, Plaintiff's contention that the ALJ's incomplete hypothetical ///

question to the vocational expert should not have constituted competent evidence to support a finding that Plaintiff is not disabled (Ct. Rec. 13, p. 12) is without merit.

**B.  Physical Limitations**

Plaintiff contends that she is also more limited from a physical standpoint than as determined by the ALJ in this case. (Ct. Rec. 13, pp. 14-15).  The ALJ concluded that Plaintiff has the physical RFC to perform sedentary exertion work.  (AR 28).  In making this determination, the ALJ rejected Dr. Roth's opinion that Plaintiff is severely limited in performing work activities due to her impairments.  (AR 28-29).

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  The Commissioner responds that the ALJ appropriately evaluated the medical evidence of record, and properly rejected Dr. Roth's opinion that Plaintiff could lift only 2 pounds or was otherwise disabled.  (Ct. Rec. 16, pp. 11-12).  The undersigned agrees.

Dr. Roth, Plaintiff's treating physician, completed physical evaluations of Plaintiff on April 30, 2002, and August 25, 2003. (AR 239-242).  On each occasion, Dr. Roth checked a box indicating that Plaintiff was severely limited, or unable to lift at least two pounds or unable to stand and/or walk.  (AR 240, 242).  The

ALJ rejected these findings noting that Dr. Roth's opinions appeared to be based upon Plaintiff's self-reports of headaches, and she was not credible regarding the frequency and intensity of such headaches. (AR 28). The ALJ properly evaluated the evidence of record noting several inconsistencies with Plaintiff's statements regarding her headaches.[3] (AR 26-27). The evidence of record also displayed information demonstrating medication abuse, as well as rebound headaches as a result of this abuse. (AR 27, 29). The ALJ also indicated that Plaintiff had stated she has experienced these headaches since her 1991 motor vehicle accident, and she was apparently working with them at that time. (AR 28). The Court finds it significant to note that Dr. Roth marked on each physical evaluation form that Plaintiff would be unable to perform at least half-time work for only 12 weeks and that treatment was likely to restore her ability to perform at least half-time work. (AR 240, 242). Furthermore, it is significant that, despite her alleged impairments, Plaintiff was enrolled in college, taking two hours of classes each day, and passing these courses. (AR 7, 347-348).

At the hearing, Dr. Craig testified that migraine headaches were Plaintiff's chief problem, there was no documented evidence that she ever experienced seizures, and there was no abnormality noted on neurological exam. (AR 337-338). He opined that Plaintiff did not meet or equal a Listings impairment and that she

---

[3]The ALJ noted that Plaintiff told Dr. Clark she had headaches every two weeks lasting 48 hours; however, she told Dr. Roth, just three months later, that she had no headaches. She later told Dr. Greeley she had three headaches a week lasting 12 hours, and then told Dr. Wurst she was having four headaches a week. By February 2003, she reported she was going two weeks between headaches. (AR 27).

should be limited to sedentary work due to her migraine headaches.
(AR 338-340).  Dr. Craig noted that DHE injections and other
medications gave her some relief.  (AR 338).  These opinions are
supported by other medical evidence of record, including some
reports of Dr. Roth.[4]  (AR 160).

It is the responsibility of the ALJ to determine credibility,
resolve conflicts in medical testimony and resolve ambiguities.
*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The Court
thus has a limited role in determining whether the ALJ's decision
is supported by substantial evidence and may not substitute its
own judgment for that of the ALJ even if it might justifiably have
reached a different result upon de novo review.  42 U.S.C. §
405(g).  In any event, the Court finds that the ALJ thoroughly
analyzed the evidence of record (AR 20-29) and provided specific
and legitimate reasons for rejecting Dr. Roth's finding that
Plaintiff was severely limited.  Accordingly, the ALJ's physical
RFC determination, that Plaintiff is limited to sedentary work, is
appropriate in this case.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this
Court finds that the ALJ's decision that Plaintiff is capable of
performing sedentary exertion work, while be restricted to simple
repetitive tasks, superficial contact with the public and no more
than simple changes in the work setting, including such jobs as a
charge account clerk, a telephone quotation clerk, and an

---

[4]Dr. Roth noted in August of 2001 that Plaintiff was doing really well,
had changed her outlook , had not had any headaches, had stopped taking
antidepressants, was really happy, was working, and was feeling good about
herself.  (AR 160).

///

addresser, jobs existing in sufficient numbers in the national economy, is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **GRANTED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___19th___ day of January, 2006.

                              s/Michael W. Leavitt
                         MICHAEL W. LEAVITT
                    UNITED STATES MAGISTRATE JUDGE